UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____



UNITED STATES OF AMERICA,

        Plaintiff,

v.

BRICKELL ORTHOPEDIC STORE, INC.
DUMARO PHARMACY, INC., EMILY MEDICAL
EQUIPMENT, INC., HEALTHCARE
SALES, INC., JLS MEDICAL SUPPLY, INC.,
OCEAN MEDICAL SUPPLIES, INC.,
PROFESSIONAL SERVICES SUPPLIES, INC.,
STEPHANIE MEDICAL SUPPLIES, CORP.,
UNITED PHARMACY DISCOUNT, INC.,
ISABEL CANEPA, ORLANDO FUENTES,
CARLOS GONZALEZ, DANIEL GUERRA,
ISABEL GUERRA, MAGALYS GUERRA,
AIZA RODRIGUEZ, CECILIA RODRIGUEZ,
MANUEL RODRIGUEZ, ISABEL SANTOS,
JORGE LUIS SANTOS, and MEILIN VALDES,

        Defendants.



_____/

## COMPLAINT FOR TEMPORARY RESTRAINING
## ORDER, PRELIMINARY AND PERMANENT INJUNCTION

The United States of America, by and through the undersigned United States Attorney,

respectfully alleges as follows:

### JURISDICTION AND VENUE

1. This complaint is brought by the United States for a temporary restraining order,

preliminary and permanent injunction and other equitable relief pursuant to 18 U.S.C. § 1345.



This court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345, 31 U.S.C. § 3730, and 28 U.S.C. § 1345.

2. This court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a), and venue is proper in this district under 28 U.S.C. §§1391(b) and 1391(c). This is the district in which the defendants are located, and in which the defendants prepared and submitted false Medicare claims.

## PARTIES

3. Plaintiff is the United States of America ("United States"). At all times material to this civil action, the Department of Health and Human Services ("DHHS") was an agency and instrumentality of the United States, and the Centers for Medicare and Medicaid Services ("CMS") was the component agency of DHHS which administers and supervises the Medicare program. CMS contracted with Palmetto Government Benefits Administrators ("PGBA") to receive, adjudicate, process and pay certain Medicare claims submitted to it by Medicare beneficiaries or providers.

4. Defendant Brickell Orthopedic Store, Inc. is a corporation organized and existing under the laws of Florida since April 27, 1999. It lists its business address as 1795 S.W. 3rd Avenue, Miami, FL 33129.

5. Defendant Aiza Rodriguez is a 28 year old female residing at 1865 Brickell Avenue, Apt. A508, Miami, Florida 33129. Aiza Rodriguez is listed as president and registered agent of Brickell Orthopedic Store, Inc. and Healthcare Sales, Inc.

6. Defendant Healthcare Sales, Inc. is a corporation organized and existing under the laws of Florida since April 27, 1999. It lists its business address at 1795 S.W. 3rd Avenue, Miami, Florida 33129.

7. Defendant Stephanie Medical Supplies, Corp. is a corporation organized and existing under the laws of Florida since November 10, 1999. It lists its business address as 2230 S.W. 8th Street, Miami, FL 33135.

8. Defendant Magalys Guerra is a 57 year old female residing at 10231 S.W. 88th Street, Miami, Florida 33176. Magalys Guerra is listed as president and registered agent of Stephanie Medical Supplies, Inc.

9. Defendant Daniel Guerra is a 39 year old male residing at 10231 S.W. 88th Street, Miami, Florida 33185. Daniel Guerra is a signatory for the corporate bank accounts of Stephanie Medical Supplies Corp., Brickell Orthopedic Store, Inc., and Healthcare Sales, Inc. Daniel Guerra is the son of Magalys Guerra, who is listed as the president of Stephanie Medical Supplies, Corp. Daniel Guerra is also the boyfriend of Aiza Rodriguez, who is listed as the president of Brickell Orthopedics Store, Inc., and Health Care Sales, Inc.

10. Defendant JLS Medical Supply, Inc. is a corporation organized and existing under the laws of Florida since September 21, 2000. It lists its business address as 6405 N.W. 36th Street, #111, Miami, Florida 33166.

11. Defendant Jorge L. Santos is a 36 year old male, residing at 10535 S.W. 124th Court, Miami, Florida 33186. Jorge L. Santos is listed as president/director and registered agent of JLS Medical Supply, Inc.

-3-

12.  Defendant Ocean Medical Supplies, Inc. is a corporation organized and existing under the laws of Florida since May 31, 1995.  It lists its business address as 801 W. 49th Street, Suite 202, Hialeah, Florida 33012.

13.  Defendant Isabel Guerra is a 38 year old female residing at 10150 N.W. 133 Street, Miami, Florida 33018.  Isabel Guerra is listed as the president and registered agent of Ocean Medical Supplies, Inc., and is listed as president and registered agent of United Pharmacy Discount, Inc.

14.  Defendant  Isabel Santos is a 40 year old female residing at 10431 N.W. 35th Place, Miami, Florida  33147.   Isabel Santos is listed as the vice president of Ocean Medical Supplies, Inc.

15.  Defendant Isabel Canepa is a 38 year old female residing at 12715 N.W. 102 Place, Miami, FL .  Isabel Canepa is an employee of Ocean Medical Supplies, Inc.

16.  Defendant United Pharmacy Discount, Inc. is a corporation organized and existing under the laws of Florida since January 26, 2000.  It lists its business address as 4254 W. 12th Avenue, Hialeah, Florida 33012.

17.  Defendant Carlos Gonzalez is a 43 year old male residing at 3924 S.W. 150th Court, Miami, Florida 33185.  Carlos Gonzalez is a former officer of United Pharmacy Discount, Inc.

18.  Defendant Emily Medical Equipment, Inc. is a corporation organized and existing under the laws of Florida since June 21, 1999.  It lists its business address at 1840 W. 49th Street, Suite 220-7, Hialeah, Florida 33012.

19.  Defendant Orlando Fuentes is a 37 year old male, residing  at 8075 W. 23rd Avenue, Unit C-5, Hialeah, Florida 33016.   Orlando Fuentes is listed as the president and registered agent of Emily Medical Equipment, Inc.

20.  Defendant Professional Services Supplies, Inc. is a corporation organized and existing under the laws of Florida since June 8, 2000.  It lists its business address as 1840 W. 49th Street, Unit 714, Hialeah, FL 33012.

21.  Defendant Meilin P. Valdes is a 36 year old female residing at 9116 N.W. 149th Terrace, Hialeah, Florida  33018.  Meilin P. Valdes is  listed as the president and registered agent of Professional Services Supplies, Inc.  Meilen Valdes is also a signatory for the corporate bank account of Emily Medical Equipment, Inc., and she is the wife of Orlando Fuentes, who is the president of Emily Medical Equipment, Inc.

22.  Defendant Dumaro Pharmacy, Inc. is a corporation organized and existing under the laws of Florida since February 1, 2001.  It lists its business address as 4750 W. Flagler Street, Miami, FL 33134.

23.  Defendant Cecilia Rodriguez is a 45 year old female residing at 8882 N.W. 176th Street, Hialeah, Florida 33018.  Cecilia Rodriguez is listed as the director and president of Dumaro Pharmacy, Inc.

24.  Defendant Manuel Rodriguez is a 58 year old male residing at 8260 N. Bayshore Drive, Miami, Florida 33138.  Manuel Rodriguez is listed as the vice president of Dumaro Pharmacy Inc.

## THE MEDICARE PROGRAM

25.     Medicare is a federal health insurance program which provides coverage for people age 65 or older and for certain disabled people.  The United States Department of Health and Human Services ("DHHS") is responsible for the Medicare program.  The Centers for Medicare and Medicaid Services  ("CMS") is the component agency of DHHS which administers and supervises the Medicare program.  CMS  has contracted with PGBA to receive, adjudicate, process and pay certain Medicare claims submitted to it by Medicare beneficiaries or providers for durable medical equipment, prosthetics, orthotics, supplies, and prescription drugs.  PGBA acts as the Durable Medical Equipment Regional Carrier (DMERC) for Region C which includes the State of Florida.  PGBA similarly handles claims relating to prescription drugs.

26.  Part B of the Medicare program, which is involved in this case, is medical insurance. Payments under the Medicare program are often made directly to a physician or provider of the goods or services, rather than to the patient (the "beneficiary").  This occurs when the provider accepts assignment of the right to payment from the beneficiary.  In that case, the provider submits its bill directly to Medicare for payment.

27.  Under Medicare rules and regulations, durable medical equipment ("DME") is equipment that can withstand repeated use, is primarily used for a medical purpose, and is not generally used in the absence of illness or injury.  Examples include orthotics, hospital beds, wheelchairs,  pressure mattresses, incontinence supplies, oxygen concentrators, and nebulizers used for respiratory conditions.  For certain DME, Medicare requires that the DME supplier submit a specific "Certificate of Medical Necessity" ("CMN") with the claim.  The medical

necessity section of the CMN must be completed and signed by the beneficiary's treating

physician.

28.    Except for Healthcare Sales, Inc., the defendant companies all became Medicare

providers.  As such, the companies were eligible to provide DME or prescription drugs to

Medicare beneficiaries, to bill Medicare, and to be paid directly by Medicare.  Medicare, through

PGBA, has been paying the defendant companies for claims submitted by them.  Healthcare

Sales, Inc. was used by some of the individual defendants to move funds received from

Medicare.

29.  In order to bill the Medicare Program, the companies would  submit a claims form to

PGBA.  When the claims form is submitted, a representative of the provider certifies the contents

of the form as true, correct and complete, and that the form was prepared in compliance with the

laws and regulations governing the Medicare Program.  Medicare will only pay for DME and

related accessories and prescription medication if they are medically necessary, and they have

been ordered by a physician.

30.  The companies must have an order from the treating physician before dispensing an

item or drug to a beneficiary.  The dispensing order must include:

> A description of the item or drug;
> The beneficiary's name;
> The name of the physician; and
> The date of the order.

31.  The company must also have a detailed order in addition to the dispensing order. The

supplier must retain the detailed written order and make it available to PGBA upon request. The

detailed order must include:

Patient's name;
A description of the item (the description can be either a narrative or a brand name/model number) and the length of need;
If the order is for accessories or supplies that will be provided on a periodic basis, it must include appropriate information on the quantity used, frequency of change or use, and length of need;
If the order is a drug, it must specify the name of the drug, concentration (if applicable), dosage, frequency of administration, and duration of infusion (if applicable).
Patient's diagnosis;
The expected start date of the order;
The physician's signature and date.

## SUMMARY OF THE FRAUD SCHEME

32. The corporate and individual defendants are engaged in a scheme to defraud the United States by billing Medicare for medical equipment, services, and prescription drugs, which were either not medically necessary or not provided to the Medicare beneficiaries. In general, the defendants' scheme to defraud works the following way.

33. The individual defendants create corporations, and then file applications for the companies to participate in the Medicare program as a provider. The individual defendants then work with individuals known as "patient recruiters." These recruiters are responsible for rounding up Medicare beneficiaries, on whose behalf the companies then file false Medicare claims. The patient recruiters are paid for each eligible Medicare beneficiary supplied. The recruiter, in turn, generally pays a smaller amount to the beneficiaries as a kickback for their participation in the scheme. The defendants, with the assistance of the recruiters and others, obtain or prepare false documentation to support the false Medicare claims, including physician prescriptions and certificates of medical necessity, DME delivery forms, and the beneficiary's information.

-8-

34. In many cases no DME or drug is provided to the beneficiary. At other times beneficiaries accept the DME or drug, but do not need it and do not use it.

35. The defendant companies were formed and utilized, in some cases exclusively, for the purpose of criminally defrauding the United States through federal health care programs. The defendants have violated numerous federal statutes, including 18 U.S.C. §287 (false claims), §371 (conspiracy), §1001 (false statements), §1347 (scheme to defraud a health care benefit program), and have committed "Federal health care offenses" as defined in 18 U.S.C. § 24.

## FALSE CLAIMS

36. The defendants have submitted and are continuing to submit Medicare claims for beneficiaries who in fact did not need or did not receive the equipment or drugs for which the defendant companies billed Medicare. Collectively, Medicare has paid the defendant companies over $23 million from January 2000 to March 2003. The false claims described below are representative of the fraud committed by the defendants.

37. M-1 is a male who has Medicare insurance coverage. From October 2000 to October 2002, defendant companies Brickell, Stephanie, and Emily billed Medicare approximately $8,000, purportedly for providing certain DME to M-1. However, M-1 did not receive any of the following items for which Medicare was billed.

a. In October 2000, Brickell billed for a lumbar-sacral orthosis and a left knee orthosis.

b. In January 2001, Brickell billed for a right knee orthosis and a left wrist-hand-finger orthosis.

c. In June 2001, Brickell billed for a left and right hip orthosis.

d. In August 2001, Stephanie billed for a left and right knee orthosis. The right knee orthosis was the same device billed and paid to Brickell in January 2001.

e. In March 2002, Stephanie billed for a right ankle-fracture orthosis and a left elbow orthosis.

f. In June 2002, Emily billed for a right and left knee orthosis. Both of these devices were previously billed by and paid to Stepahnie in August 2001.

g. In October 2002, Brickell billed for a left and right knee orthosis.

38. M-2 is a male who has Medicare insurance coverage. From November 2000 to December 2001, defendant companies Brickell, Stephanie, JLS and Professional billed Medicare approximately $12,000, purportedly for providing certain orthotic devices and incontinence supplies to M-2. However, M-2 did not receive any of the following items for which Medicare was billed.

a. From November 2000 through December 2001, Professional billed for such items as left and right knee orthosis, male external catheters, lubricants, urinary leg bags, and bedside drainage bags. The incontinence supplies billed by Professional were billed approximately once a month for the entire year of service.

b. In February 2001, Brickell billed for the same left knee orthosis for which Professional had billed Medicare in November 2000, and Brickell also billed for a left wrist-hand-finger orthosis.

c. In April 2001, Stephanie billed for the same right knee orthosis for which Professional had billed Medicare November 2000. Stephanie also billed for a left ankle-fracture orthosis.

d. In June 2001, Brickell billed for a right and left hip orthosis.

-10-

e. In October 2001, Stephanie billed for a right ankle-fracture orthosis and a left knee orthosis.

f. The same month, October 2001, JLS billed for the same left knee orthosis as Stephanie, and also billed for a left elbow orthosis.

39. F-1 is a female who has Medicare insurance coverage. From February 2001 to October 2002, defendant companies Brickell, Stephanie, and JLS billed Medicare approximately $8,230, purportedly for providing certain orthotic devices to F-1. However, F-1 did not receive any of the following items for which Medicare was billed.

a. In February 2001, Brickell billed  for a left adjustable knee orthosis.

b. In October 2001, JLS billed for a thigh-knee-calf orthosis and a left elbow orthosis.

c. In November 2001, Brickell billed for a left shoulder-elbow-wrist-hand orthosis and a right knee joint orthosis.

d. In January 2002, JLS billed for a right shoulder-elbow-wrist-hand orthosis and a right wrist-hand-finger orthosis.

e. In April 2002, Brickell billed again for a left upper extremity fracture orthosis and a right knee orthosis.

f. In June 2002, Stephanie billed for a right shoulder-elbow-wrist-hand orthosis which was the exact same device that was billed and paid to JLS in January 2002.

g. In September 2002, Brickell billed again for a left elbow orthosis and a multiple post cervical collar orthosis.

h. In October 2002, Stephanie billed for a left hip orthosis, a left lower extremity- pelvic control-hip orthosis, and a right knee orthosis.

-11-

i. The same month, October 2002, Brickell billed for a left and right shoulder-elbow-wrist-hand orthosis.

40. M-3 is a male who has Medicare insurance coverage.  From December 2000 to October 2002, defendant companies Brickell, Stephanie, and Emily billed Medicare approximately $12,000 for orthotic devices and incontinence supplies purportedly provided to M-3.  However, M-3 did not receive any of the following items for which Medicare was billed.

a.   December 2000, Brickell billed for a left knee orthosis and a right wrist-hand-finger orthosis.

b.   Two months later, Stephanie billed for the same left knee orthosis and right wrist-hand-finger orthosis.

c.   In April 2001, Stephanie billed for a right fracture ankle-foot orthosis and a left elbow orthosis.

d.   In May 2001, Emily began billing every month for incontinence supplies.  The billings consisted of such items as a male external catheter, extension draining tubing, bedside drainage bag, and urinary leg bag.  These billings for the incontinence supplies went on until October 2002.  Also during the Emily billings, Brickell and Stephanie billed for other orthotic devices.

e.   In August 2001, Brickell billed for a right hip orthosis.

f.   In October 2001, Brickell billed for a left knee orthosis.

g.   In December 2001, Stephanie billed for a left shoulder-elbow-wrist-hand orthosis and a right knee orthosis.

h.   In January 2002, Brickell billed for a left hip orthosis.

-12-

41.  F-2 is a female with Medicare insurance coverage.  From October through December 2002, defendant companies Professional and United billed Medicare approximately $5,000 for medical equipment and pharmaceuticals purportedly needed and received by F-2.  However, F-2 did not have any medical need, and at times did not receive, the following items for which the defendants billed Medicare.

a.  In October 2002, Professional billed for a powered pressure-reducing air mattress, a nebulizer, a wheelchair, a lumbar-sacral orthosis, a right knee orthosis, collagen dressings, and gauze.

b.  That same month, October 2002, United billed for albuterol and ipratropium bromide, both inhaled nebulizer medications.

c.  In November 2002, Professional billed for the nebulizer and an oxygen concentrator.

d.  That same month, November 2002, United billed for albuterol and ipratropium bromide.

e.  In December 2002, Professional billed again for the nebulizer and oxygen concentrator.

42.  M-4 is a male who has Medicare insurance coverage.  From July 2001 through January 2002, defendant companies Stephanie, JLS and United billed Medicare approximately $8,000 for purportedly providing M-4 with orthotic devices, aerosol medications and incontinence supplies.  However, M-4 did not receive any of the following items for which Medicare was billed.

a.  From July 2001 through January 2002, United billed for two nebulizer medications per month, ipratropium bromide and metaproterenol sulfate.

-13-

b.  Also starting in July 2001, JLS billed for a right knee orthosis and a right elbow orthosis, and Stephanie billed for a left knee orthosis and a left shoulder-elbow-wrist-hand orthosis.

c.  In October 2001, JLS billed for the following incontinence supplies: an appliance cleaner, leg strap, urinary leg bag, bedside drainage bag, male external catheter, and extension drainage tubing.

d.  In December 2001, Stephanie billed for a left shoulder-elbow-wrist-hand orthosis, the same device they were paid for in July 2001.

43.    Defendants Ocean and Dumaro have also billed Medicare for purportedly supplying DME or prescription drugs, which were either not medically necessary or not received by the beneficiaries.  Ocean and Dumaro's claims included claims for beneficiaries for whom the other defendant companies were also billing Medicare.

44.    The defendant companies are continuing to bill Medicare for equipment or services supposedly rendered to beneficiaries who either do not need or are not receiving the equipment or services for which the companies are billing.

45.    From January 2000 through March 31, 2003, Medicare has paid the defendant companies the following amounts for claims they submitted.

| DEFENDANT COMPANY | APPROXIMATE AMOUNT |
|---|---|
| BRICKELL ORTHOPEDIC STORE | 6,018,671.93 |
| DUMARO PHARMACY | 941,258.89 |
| EMILY MEDICAL EQUIPMENT | 1,521,974.96 |
| JLS MEDICAL SUPPLY | 627,564.68 |
| OCEAN MEDICAL SUPPLIES | 1,820,226.44 |
| PROFESSIONAL SERV.SUPPLIES | 1,927,229.13 |
| STEPHANIE MEDICAL SUPPLIES | 3,407,401.21 |
| UNITED PHARMACY DISCOUNT | 7,155,031.18 |
| TOTAL | 23,419,358.42 |

## DISSIPATION OF ASSETS

46.     The individual defendants have been engaged in laundering and dissipating large amounts of the Medicare fraud proceeds.  Between March 2001 and May 2002, a government cooperating witness ("CW") and a HHS Special agent acting undercover were able to have numerous recorded conversations with the individual defendants about the fraud scheme and about the laundering of the proceeds.  The individual defendants gave large checks to the CW in order to make it appear that the companies were paying for advertising and other expenses.  Only a minimal amount was used for advertising, and instead virtually all the large checks given to CW were simply exchanged for cash, minus the CW's fee for laundering the money.

47. The bank records of the defendant companies also show that the Medicare fraud proceeds are being dissipated quickly.  The following is a summary.

### Brickell, Healthcare Sales, Stephanie, and JLS

48.     Defendants Daniel Guerra and Aiza Rodriguez have signatory authority over the bank accounts of defendant companies Brickell and Healthcare Sales.  Bank records from Brickell from March 2001 to April 2002 show that the proceeds were funneled directly and indirectly to the individual defendants.  The funds were also used to continue the fraud.  Over $500,000 went directly to defendant Aiza Rodriguez, almost $500,000 was changed to cash using the CW's companies, almost $250,000 was used for retail and luxury retail stores, almost $50,000 went to hotel and travel expenses, over $35,000 went to a patient recruiter, over $16,000 was taken out in cash, and over $140,000 was funneled to Healthcare Sales.  Bank records from Healthcare Sales from November 1999 to April 2002 show that over $50,000 went directly to

defendant Aiza Rodriguez, almost $70,000 was changed to cash using the CW's companies, and over $14,000 went to a patient recruiter.

49.    Defendants Daniel Guerra and Magalys Guerra have signatory authority over the two Stephanie bank accounts. Bank records from March 2001 to April 2002 for the account that received Medicare proceeds shows that approximately $90,000 went directly to defendant Aiza Rodriguez, over $60,000 went directly to defendant Magalys Guerra, over $40,000 went to Daniel Guerra, over $20,000 was taken out in cash, over $200,000 was changed to cash using the CW companies, almost $100,000 went to retail stores, over $60,000 went to a patient recruiter, and over $200,000 was funneled to a second Stephanie account. Bank records from October 2001 to April 2002 for the second Stephanie account show that over $40,000 went directly to Daniel Guerra, an additional $3,000 went to Magalys Guerra, almost $3,000 was taken out in cash, over $100,000 was changed to cash using one of the CW's companies, over $10,000 went to travel expenses, and almost $20,000 went to retail stores.

50.    Records from 2003 show a continuing pattern of quick dissipation of assets by the defendants. The 2003 bank records for the corporate accounts of Brickell and Stephanie, and for the personal accounts of Daniel Guerra and Aiza Rodriguez show large amounts of money being withdrawn as quickly as it comes in. For example, records from Brickell show that: in January 2003 approximately $130,000 was deposited, and approximately $150,000 was withdrawn; in February, 2003 approximately $60,000 was deposited, and approximately $80,000 was withdrawn; in March 2003 approximately $40,000 was deposited, and approximately $100,000 was withdrawn.

-16-

51.    Records from one Stephanie account show that: in January 2003 approximately $65,000 was deposited, and approximately $100,000 was withdrawn; in February 2003 approximately $90,000 was deposited, and approximately $60,000 was withdrawn; in March 2003 approximately $20,000 was deposited, and approximately $57,000 was withdrawn. Records from another Stephanie account show that: in January, 2003 approximately $100,000 was deposited and approximately $160,000 was withdrawn; in February, 2003 approximately $50,000 was deposited and approximately $60,000 was withdrawn; in March, 2003 approximately $50,000 was deposited and approximately $80,000 was withdrawn.

52.    The personal accounts of Daniel Guerra and Aiza Rodriguez also show significant withdrawals in 2003.  For example, Guerra's account at First Union shows that he withdrew approximately $20,000 in January of 2003 and approximately $36,000 in March of 2003, reducing his balance as of April 14, 2003 to less than $400.  The joint bank account held by Daniel Guerra and Aiza Rodriguez at Wachovia shows that they withdrew approximately $20,000 from January to March of 2003.  Two additional personal accounts held by Aiza Rodriguez at Wachovia show that in the period from January to March 2003, she withdrew approximately $16,000 from one account, and approximately $26,000 from the other account.

53.    Defendant Jorge Luis Santos is the signatory of the JLS corporate account. Records from February 2001 to April 2002 show that almost $40,000 went directly to Jorge Santos, over $24,000 was taken out in cash, over $50,000 was changed to cash using the CW's companies, over $20,000 went to pay credit cards, and almost $7,000 went to retail stores.

54.    The 2003 records of JLS and of Santos' personal accounts also reflect a quick dissipation of funds.  For example, the JLS account shows that in March of 2003 approximately

-17-

$20,000 was deposited and approximately $20,000 was withdrawn. Also, one of Santos' personal accounts shows that from January to March 2003, approximately $7,000 was deposited, and approximately $11,000 was withdrawn.

### Ocean and United

55.    Defendant Isabel Guerra is the signatory of the Ocean corporate account. Records from March 2001 to April 2002 show that over $60,000 went directly to Isabel Guerra, over $92,000 went to defendant Isabel Santos, who is also a corporate officer, almost $75,000 went to Isabel Canepa, over $240,000 was changed to cash using the CW's companies, over $50,000 went to pay credit cards, and over $12,000 went to retail stores.

56.    Defendants Isabel Guerra and Carlos Gonzalez are the signatories of the United corporate account. Records from March 2001 to April 2002 show that almost $900,000 went directly to Isabel Guerra, almost $700,000 went directly to Gonzalez, approximately $450,000 was changed to cash using the CW's companies, over $120,000 went to a patient recruiter, and over $17,000 went to retail stores.

57.    The 2003 records of Ocean and United continue to show a quick dissipation of funds. Ocean's bank records from January to March 2003 show that between $60-70,000 was deposited and between $60-$70,000 was withdrawn each month. United's bank records from January to February 2003 show that around $300,000 was deposited and withdrawn each month. In March 2003 approximately $400,000 was deposited, and approximately $300,000 was withdrawn.

**Emily and Professional**

58.    Defendants Orlando Fuentes and his wife Meilin Valdes have signatory authority over Emily's corporate account.  Records from March 2001 to May 2002 show that almost $700,000 went directly to Fuentes, and approximately $175,000 was changed to cash using the CW's companies.

59.  Defendant Meilin Valdes is the signator of the Professional corporate account. Records from February 2001 to April 2002 show that over $340,000 went directly to Meilen Valdes, over $17,000 went to her sister Marlen Valdes, over $6,000 was taken out in cash, almost $70,000 was changed to cash using the CW's companies, and over $70,000 went to pay credit cards.

60.    The 2003 records of Emily and Professional show that the dissipation of funds continues.  For example, Emily's records from January to March 2003 show that approximately $150,000 was deposited and approximately $120,000 was withdrawn.  Similarly, Professional's records from January to March 2003 show that approximately $135,000 was deposited and approximately $155,000 was withdrawn.

**Dumaro**

61.    Defendants Cecilia Rodriguez and Manuel Rodriguez are the signators of the Dumaro account.  Records from April 2001 and May 2002 show that over $60,000 went directly to Manuel Rodriguez, over $40,000 went directly to Cecilia Rodriguez, over $30,000 was taken out in cash, and over $35,000 was changed to cash using the CW's companies.

62.    Records from 2003 show that the dissipation of funds is continuing.  Dumaro's bank records from January to March 2003 show that approximately $180-190,000 was deposited

-19-

and withdrawn each month.  Cecilia Rodriguez's personal account shows that from mid

December 2002 to mid February 2003 approximately $4,500 was deposited and withdrawn.

Manuel Rodriguez's personal account shows that from mid December 2002 to mid March 2003

approximately $33,000 was deposited and approximately $25,000 was withdrawn.

## INJUNCTIVE RELIEF

63.  Defendants, Brickell Orthopedic Store, Inc., Dumaro Pharmacy, Inc., Emily Medical

Equipment, Inc., Healthcare Sales, Inc., JLS Medical Supply, Inc., Ocean Medical Supplies, Inc.,

Professional Services Supplies, Inc., Stephanie Medical Supplies, Corp., United Pharmacy

Discount, Inc., Isabel Canepa, Orlando Fuentes, Carlos Gonzalez, Daniel Guerra, Isabel Guerra,

Magalys Guerra, Aiza Rodriguez, Cecilia Rodriguez, Manuel Rodriguez, Isabel Santos, Jorge

Luis Santos and Meilin Valdes presented or caused to be presented false and fraudulent claims

upon the United States in violation of 18 U.S.C. § 287, 18 U.S.C. § 371, and 18 U.S.C. §1001.

64.  In addition, Defendants committed a Federal health care offense, as defined in 18

U.S.C. § 24, by presenting or causing to be presented false, fictitious and fraudulent claims to the

United States.  Defendants' claims to the United States were violations of 18 U.S.C. § 1035,

False Statements Relating to Health Care Matters, and 18 U.S.C. § 1347, Health Care Fraud, as

well as violations of 18 U.S.C. § 287, 18 U.S.C. § 371, and 18 U.S.C. §1001.

65.  Defendants' fraud upon the United States constitutes a continuing and substantial

injury to the United States and its citizens.

66.  The United States brings this action to protect Medicare funds by restraining

defendants' unlawful fraudulent conduct and to protect and restrain the transfer of funds and

assets now in defendants' hands as ill-gotten gains from their fraud upon the Medicare program.

-20-

67. In support of this complaint, the United States is filing the Declaration of Lynnette Alvarez, Special Agent of the Federal Bureau of Investigation.

68. Upon a showing that defendants are violating 18 U.S.C. § 287, 18 U.S.C. § 371, 18 U.S.C. §1001, or are committing a Federal health care offense, the United States is entitled, under 18 U.S.C. §1345, to a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining all future fraudulent conduct and any other action which this Court deems just in order to prevent a continuing and substantial injury to the United States. The United States is also entitled to an injunction to bar the defendants from alienating, disposing, withdrawing, transferring, removing or dissipating any property obtained as a result of a Federal health care offense, property traceable to such violation, or property of equivalent value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that:

That a temporary restraining order, preliminary injunction and permanent injunction be granted in this matter enjoining the defendants:

1. Brickell Orthopedics Store, Inc.
2. Dumaro Pharmacy, Inc.
3. Emily Medical Equipment, Inc.
4. Healthcare Sales, Inc.
5. JLS Medical Supply, Inc.
6. Ocean Medical Supplies, Inc.
7. Professional Services Supplies, Inc.
8. Stephanie Medical Supplies, Corp.
9. United Pharmacy Discount, Inc.
10. Isabel Canepa
11. Orlando Fuentes
12. Carlos Gonzalez
13. Daniel Guerra
14. Isabel Guerra
15. Magalys Guerra

16. Aiza Rodriguez
17. Cecilia Rodriguez
18. Manuel Rodriguez
19. Isabel Santos
20. Jorge Luis Santos
21. Meilin Valdes

their agents, employees, attorneys, and all persons acting in concert and participation with them,

including all banking and other financial institutions at which they do business, and all other

corporations over which the defendants exercise control, be enjoined as follows:

(1)     From making or conspiring to make false or fraudulent Medicare

reimbursement claims to the Medicare program in violation of 18 U.S.C. § 287, 18 U.S.C. § 371,

and 18 U.S.C. §1001, and from committing any Federal health care offense, as defined in 18

U.S.C. § 24;

(2)     From alienating, withdrawing, transferring, removing, dissipating or

otherwise disposing of, in any manner, any moneys or assets presently deposited, or held on

behalf of the defendants by any financial institution, trust fund, or other financial agency, public

or private, that are proceeds from false, fictitious, or fraudulent claims made by the defendants,

or any moneys of an equivalent value to those taken through false, fictitious, or fraudulent

claims.

(3)     From alienating, withdrawing, transferring, removing, dissipating or

otherwise disposing of, in any manner, assets, real or personal, in which any of defendants

acquired an interest after January 1, 2000.

And that the Court further order the defendants their agents, employees, attorneys, and all

persons acting in concert and participation with them, including all banking and other financial

institutions at which they do business, and all other corporations over which the defendants exercise control,

(4)     To preserve all business, financial and accounting records, including bank records, which detail defendants' business operations and disposition of any payment which directly or indirectly arose from the payment of money to the defendants on behalf of the Medicare program;

(5)     To preserve all medical records, including patient records, which relate to defendants' business operation and/or to services for which claims were submitted to the Medicare program;

And that the Court order each defendant as follows:

(6)     to provide to the plaintiff the following:

(A) a list of all post office boxes or other locations at which mail addressed to defendants is received;

(B) a list of all financial institutions, including but not limited to banks and brokerage houses, at which are or have been maintained in the past four years savings, checking, or any other kind of account or other safe deposit box into which money or assets have been deposited in defendants' names or in the names of their agents, employees, officers, persons acting in concert with them, or any business names under which they operate, together with the number or other designation of each such account or box;

(C) a list of all financial institutions, including but not limited to, banks and brokerage houses, at which are or have been maintained in the past four years savings, checking, or any other kind of account or other safe deposit box into which monies received in response to

-23-

any of the activities described in plaintiff's complaint, or previous activities in which similar Medicare providers have been operated, have been deposited, together with the number of such box or other designation of each such account or box; and

(D) the names, addresses, and telephone numbers of any individuals who have received remuneration of any kind for assisting in record-keeping, bookkeeping, accounting, brokering, or financial, investment, or tax advice or consultation for any defendant in the past four years.

(7)     To provide an accounting of the assets in which any of the defendants acquired an interest after January 1, 2000, within ten calendar days, and to provide on a monthly basis, commencing forthwith, suitable reports detailing their financial condition;

(8)     To complete a Financial Disclosure Statement form provided to the defendants by the plaintiff within ten calendar days; and

(9)     that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

ANA MARIA MARTINEZ
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street
Miami, FL  33132
Tel.(305) 961-9431
Fax (305) 536-4101
Fla. Bar No. 0735167
Ana.Maria.Martinez@usdoj.gov

-24-

JS 44
(Rev. 07/89)

## CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading     other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

United States of America

**DEFENDANTS** 03 - 21059

Brickell Orthopedic Store, Inc.
Dumaro Pharmacy, Inc. Emily Medical
Equipment, Inc., et al.

CIV-JORDAN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Dade 03cv 21059/AJ/Brown

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ana Maria Martinez, AUSA
99 N.E. 4th St., Miami, FL  33132
(305) 961-9431

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
BROWN

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

18 U.S.C. 1345

IVa. _____ days estimated (for both sides) to try entire case.

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

| A CONTRACT | TORTS | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury — Med Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers Liability |  | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| B [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| B [ ] 152 Recovery of Defaulted Student Loans (Excl Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 810 Selective Service |
| B [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders Suits | [ ] 355 Motor Vehicle Product Liability | B [ ] 380 Other Personal Property Damage | **A LABOR** | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability |  |  | B [ ] 720 Labor/Mgmt Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **B PRISONER PETITIONS** | [ ] 730 Labor/Mgmt Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence Habeas Corpus | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| B [ ] 220 Foreclosure | [ ] 442 Employment |  | [ ] 790 Other Labor Litigation | **A FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| B [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | B [ ] 791 Empl Ret Inc Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty |  | [ ] 871 IRS — Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other |  |  | ★ [ ] 890 Other Statutory Actions ★ A or |
| [ ] 290 All Other Real Property |  | [ ] 550 Civil Rights |  |  |  |
|  |  | [ ] 555 Prison Condition |  |  |  |

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Refiled
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION**
- [ ] UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND:** [ ] YES [X] NO

**VIII. RELATED CASE(S)
IF ANY** (See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE
4/28/03

SIGNATURE OF ATTORNEY OF RECORD
Ana Maria Martinez, Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
S/F I-2
REV. 6/90

FOR OFFICE USE ONLY:  Receipt No. _____   Amount: _____

Date Paid: _____   M/ifp: _____